Thomas McQUARRIE, Appellant

v.

The STATE of Texas.

No. PD–0803–11.

Court of Criminal Appeals of Texas.

Oct. 10, 2012.

Kimberly De La Garza, Seguin, for Appellant.

Michael A. Mark, Asst. District Atty., Seguin, TX, Lisa C. McMinn, State's Attorney, Austin, TX, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which MEYERS, JOHNSON, KEASLER, and ALCALA, JJ., joined.

Appellant, Thomas McQuarrie, was convicted of sexual assault. *See* TEX. PENAL CODE § 22.011(a)(1)(A). The trial court denied Appellant's motion for new trial, which alleged that the jury, after having retired to deliberate, received other evidence not then admitted by the court that was detrimental to Appellant's case. The Thirteenth Court of Appeals affirmed, holding that the trial court properly excluded the jurors' affidavits and testimony pursuant to Texas Rule of Evidence 606(b) and that Rule 606(b) was constitutional. *McQuarrie v. State*, 2011 WL 1442335, 2011 Tex.App. LEXIS 2859 (Tex.App.-Corpus Christi Apr. 14, 2011) (mem. op., not designated for publication). We reverse the judgment of the court of appeals.

## I. BACKGROUND

Appellant was indicted for the sexual assault of Lisetta Camarillo.[1] *See* TEX. PENAL CODE § 22.011(a)(1)(A). Appellant and Camarillo had known each other for a number of years and became related by marriage when Appellant's brother mar-

---

1. The indictment specifically alleged that Appellant did "intentionally and knowingly cause the penetration of the sexual organ of Lisetta Camarillo, by defendant's sexual organ, without the consent of Lisetta Camarillo."

ried Camarillo's mother. Both Appellant and Camarillo testified that Camarillo was homosexual and not bisexual. Appellant testified that they were very close and hung out every day. He also stated that they had discussed her sexuality, and although they "tried to beat around the bush about it a lot," he believed that Camarillo was so comfortable with him that she wanted to "experiment."

Camarillo testified that she and Appellant "were buddies" who "just hung out." She stated that she never had a romantic interest in him and never flirted with him. She also denied discussing having sex with him. Camarillo additionally testified that she had been dating the same woman for four years, that it had been ten years since she had a sexual interest in a male, that she had not had a romantic relationship with a male since she was 14 or 15 years old, and that she was a virgin before the sexual intercourse with Appellant. Camarillo described the thought of having sex with a man as "[d]isgusting; nasty; just uncomfortable."

On Friday, April 16, 2006, Camarillo spent all day at her aunt's house with family and friends. She explained that they were barbecuing and drinking. That afternoon, Appellant and his friend came over and invited her to Appellant's parents' house where they were staying.[2] Appellant, his friend, and Camarillo returned to Appellant's house at around 10:00 p.m. Appellant testified that all three individuals drank beer and shots, smoked marijuana, and used cocaine. However, Camarillo testified that she only drank a part of a beer at her aunt's house and then split a marijuana joint at Appellant's house. She explained that Appellant and his friends were drinking and using cocaine, but when the cocaine was offered to her, she de-

clined. Camarillo also stated that the only thing she drank at Appellant's house was a glass of water—at around 12:30 or 1:00 a.m., she had asked Appellant for a drink, and he brought her a glass of water. Camarillo testified that, after she drank the water, she did not feel well and that her "stomach just felt real light." Appellant denied giving her water.

After Camarillo went to sleep, Appellant laid down beside her. According to Appellant, Camarillo put her hand on his stomach, and they started kissing and rubbing each other. After about ten minutes of touching, Appellant got up, took his shorts off, and got a condom. Appellant testified that when he came back, he got on top of Camarillo, pulled her shorts to the side, and had sexual intercourse with her. He stated that Camarillo was awake and coherent throughout the encounter. During a later interview with police, Appellant admitted to having sexual intercourse with Camarillo and claimed it was consensual. He also denied giving Camarillo any date rape drugs.

In contrast, Camarillo testified that when she woke up, she "felt dirty," and she "realized that there was only one cover, and [her] shorts and stuff were pushed over and up, and [she] just didn't feel ... right." Camarillo testified that she did not remember anything occurring after she fell asleep, and she neither gave Appellant permission to have sex with her nor voluntarily had sex with Appellant.

On Saturday morning, Camarillo left Appellant's house and went to her aunt's house. She explained that she "really didn't know what happened," but she "knew something was wrong." Several witnesses testified to Camarillo's distraught emotions and her explanation of

**2.** Testimony revealed that Appellant's parents had moved out, and the house was vacant, except for a few pieces of furniture including a television and a mattress.

what happened. At the urging of family and friends, Camarillo eventually reported the sexual assault to the police.

A patrol officer testified that he thought it was "kind of strange" that a female who only drank a little bit of beer and smoked a joint of marijuana would stay asleep during sexual intercourse. He also testified that it was possible that Camarillo had been drugged and that such drugs go out of the system quickly, making them difficult to test for.

At trial after both sides rested, the charge was read to the jury. The jury had been instructed at the outset of the trial that "[t]he evidence you can consider in this case will only be testimony which you hear in court and any physical exhibits which are offered and admitted into evidence before you." This was reiterated in the jury charge:

> During your deliberations in this case, you must not consider, discuss, or relate any matters not in evidence before you. You should not consider or mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

At the end of the first day of deliberations, the jurors sent a note indicating that they were split nine votes to three in favor of guilt. The court gave the jurors the option of continuing their deliberations that night or returning in the morning. When they decided to resume deliberations in the morning, the court instructed them that "[i]t's very important that you remember my instructions not to discuss this case among yourselves, nor allow anyone else to discuss it with you." The court also emphasized that the next morning, "When there's 12 of you [in the jury room],

you can start deliberating. Can't deliberate until there's 12 of you there."

The jurors returned the next morning and deliberated for an hour before finding Appellant guilty. The court assessed Appellant's punishment at four years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Subsequently, Appellant filed a motion for new trial, arguing that he was entitled to a new trial because the jury, after having retired to deliberate, received other evidence not then admitted by the court that was detrimental to his case. *See* Tex. R.App. P. 21.3(f) & (g). At the hearing on the motion, Appellant offered the affidavits of two jurors, Kevin LaFleur and Frank Jiral, who affirmed that a third juror had researched the effects of date rape drugs when the jury was released for the night and that she had relayed that information to the rest of the jury the next morning. LaFleur stated that the third juror, Opal Touchard, informed the jury that the date rape drugs would last up to 72 hours and that the side effects would last for up to a week. Jiral stated that he was still undecided when they returned for deliberations on the second day, and the information provided by the third juror, who he identified as the only woman on the jury, changed his mind. Jiral also stated that the information had changed the mind of the third juror. The trial court determined that the affidavits did not show an outside influence [3] and refused to consider them pursuant to Rule 606(b). Accordingly, the trial court denied the motion for new trial.

## II. COURT OF APPEALS

On direct appeal, Appellant argued, inter alia, that he was deprived of his rights

---

**3.** The court explained, "I think my understanding of the case law and—and the rule is that information received from another juror is not an outside influence, which is the only thing he can testify to.... I will not consider [his testimony] on this motion."

to due process and to an impartial jury "by a juror who conducted independent research on the internet during an overnight recess and conveyed that information to the other jurors during deliberations the next morning." The Thirteenth Court of Appeals disagreed and affirmed the trial court's judgment. *McQuarrie,* 2011 WL 1442335, 2011 Tex.App. LEXIS 2859.

The court of appeals held that the trial court properly excluded the jurors' affidavits and testimony under Rule 606(b). *Id.* at *5–6, 2011 Tex.App. LEXIS 2859, at *15–17. Relying on its prior decision in *Soliz v. Saenz,* 779 S.W.2d 929 (Tex.App.-Corpus Christi 1989, pet. denied), the court reasoned that the jurors' affidavits showed no evidence of outside influence because the information was gathered by a juror and introduced to the other jurors by that juror. The court of appeals also held that the application of Rule 606(b) was constitutional and did not violate Appellant's right to a fair trial. *McQuarrie,* 2011 WL 1442335, at *6–7, 2011 Tex.App. LEXIS 2859, at *17–19. The court presumed that the rules approved by the Supreme Court and the Court of Criminal Appeals are constitutional. *Id.* at *6, 2011 Tex.App. LEXIS 2859, at *17 (citing *Luquis v. State,* 72 S.W.3d 355, 365 (Tex. Crim.App.2002)).

We granted Appellant's petition for discretionary review to analyze whether the court of appeals violated his federal and state "constitutional trial rights to confrontation and cross-examination by upholding the trial court's exclusion, pursuant to Rule 606(b) Tex.R. Evid., of juror testimony and affidavits offered for purposes of [Appellant's] motion for new trial on the ground that a juror conveyed to other jurors harmful information obtained from her internet research during an overnight break in deliberations."

## III. ARGUMENTS OF THE PARTIES

### A. Appellant's Arguments

Appellant contends that the juror misconduct in a criminal prosecution in actively seeking additional information not admitted into evidence cannot and should not be protected under any rule that generally protects the sanctity of the jury's deliberations. He argues that the exclusion of the affidavits reflecting that misconduct denied him of his constitutional rights to confrontation and cross-examination and so infected the entire trial process that due process and due course of law require that he receive a new trial.

Appellant urges this court to re-examine the language relied upon by the court of appeals. He contends that Rule 606(b) was not intended to eliminate post-trial questioning altogether. *See Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 370, 372 (Tex.2000). He also argues that the language relied upon is contrary to the plain language of the rule itself because, in application, it denies the right to a fair trial and condones similar violations in the future. Accordingly, Appellant avers that the juror evidence should be allowed in this instance because the misconduct was not part of deliberations—it occurred at home, during an overnight break. He further claims that the internet has few guarantees of accuracy and provides extraneous information beyond the common knowledge that most jurors are presumed to possess.

### B. State's Arguments

The State responds that information gathered by a juror that is shared with the other jurors does not constitute outside influence, even if it is shared specifically to influence the other jurors' votes. *See Hines v. State,* 3 S.W.3d 618, 623 (Tex. App.-Texarkana 1999, pet. ref'd). The

State argues that the only juror misconduct alleged—that a juror went home during deliberations, conducted research on the internet, and discussed the findings with the other jurors—does not constitute an outside influence because the information came from a member of the jury. Therefore, the State avers that the trial court properly excluded the affidavits and testimony under Rule 606(b).

The State further argues that, without competent evidence in the record to show any juror misconduct, Appellant cannot establish any violation of his state or federal constitutional rights. Even so, the State maintains that Rule 606(b) is constitutional because, rather than prohibiting a defendant from proving jury misconduct, it merely limits the method by which a defendant may prove that misconduct.

## IV. ANALYSIS

 We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim.App.2001). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex.Crim.App.2006); *see Salazar*, 38 S.W.3d at 148. A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *Holden*, 201 S.W.3d at 763;

*Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim.App.2004).

 *Boykin* requires appellate courts to construe a statute in accordance with the plain meaning of its literal text unless the language of the statute is ambiguous or the plain meaning leads to absurd results. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). However, *Boykin*'s holding does not apply to our interpretation of the Rules of Evidence. *Henderson v. State*, 962 S.W.2d 544, 551 (Tex.Crim.App.1997). In construing those rules, we may consider extra-textual sources even absent ambiguity or absurd results. *Lopez v. State*, 253 S.W.3d 680, 685 (Tex.Crim.App.2008). Still, "we should attempt to effectuate the plain language absent important countervailing considerations. Hence, the plain language is a good place to begin." *Henderson*, 962 S.W.2d at 552.

Texas Rule of Evidence 606(b) prohibits a juror from testifying about "any matter or statement occurring during the jury's deliberations," with two exceptions. Tex.R. Evid. 606(b).[4] A juror may testify about "whether any outside influence was improperly brought to bear upon any juror" or "to rebut a claim that the juror was not qualified to serve." *Id.* The latter exception is not relevant in this case.

 Although this Court has acknowledged the general rule that Rule 606(b) permits juror testimony relating to improper outside influence,[5] it has never spe-

---

4. Texas Rule of Evidence 606(b) provides the following:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror

would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

5. *See, e.g., Ocon v. State*, 284 S.W.3d 880, 886 (Tex.Crim.App.2009); *Lucero v. State*, 246 S.W.3d 86, 95 (Tex.Crim.App.2008).

cifically defined what qualifies as an outside influence, or specifically held that any additional evidence that a juror brings into deliberations does not qualify as such. Nonetheless, we have recognized that "[t]he plain language of Rule 606(b) indicates that an outside influence is something outside of both the jury room and the juror." *White v. State*, 225 S.W.3d 571, 574 (Tex.Crim.App.2007); *see also Golden Eagle*, 24 S.W.3d at 370 ("[A]n 'outside influence' originates from sources other than the jurors themselves."). The rule prevents a juror from testifying that the jury discussed improper matters *during deliberation*. *Golden Eagle*, 24 S.W.3d at 372.

■ The court of appeals concluded that information must be communicated from someone other than a juror in order to be considered an "outside influence," but such a definition is far more narrow than the plain meaning of the rule requires. The court's narrow interpretation undermines Rule 606(b)'s clear exception to reveal outside influences "improperly brought to bear upon any juror" by effectively excluding anything that is communicated to the jury by one of the jurors, regardless of the origin of that information. As the Texas Supreme Court has emphasized, Rule 606(b) was "not intended to eliminate post-trial questioning altogether." *Id.*

In reaching its holding, the court of appeals gave special consideration to its own precedent and the opinions of other intermediate appellate courts. *McQuarrie*, 2011 WL 1442335, at *5–6, 2011 Tex. App. LEXIS 2859, at *14–17. That line of cases is based on the following language from *Baley v. W/W Interests, Inc.*:

> An 'outside influence' must emanate from outside the jury and its deliberations. It does not include all information not in evidence, unknown to the jurors prior to trial, acquired by a juror and communicated to one or more other jurors between the time the jurors received their instructions from the court and the rendition of the verdict. To constitute 'outside influence' the source of the information must be one who is outside the jury, *i.e.*, a non-juror, who introduces the information to affect the verdict. Information gathered by a juror and introduced to other jurors by that juror—even if it were introduced specifically to prejudice the vote—does not constitute outside influence.

*Baley v. W/W Interests, Inc.*, 754 S.W.2d 313, 316 (Tex.App.-Houston [14th Dist.] 1988) (citations omitted), *reversed on other grounds by Golden Eagle*, 24 S.W.3d at 371–72.

But the reasoning in *Baley* and its characterization of "outside influence" is unworkable. As the dissent in *Baley* originally articulated, "By defining *outside influence* in the narrowest of terms, thereby precluding judicial inquiry into blatant and impermissible jury conduct, the majority denies appellants their right to a fair trial and, unwittingly, condones similar violations in the future." *Id.* at 321 (Ellis, J., dissenting). The potential for absurd results is clear. To illustrate, under the narrow definition, if a juror in a DWI trial sneaks out to the defendant's car during the lunch break and sees a bottle of whiskey on the passenger seat, that is not an outside influence. But if a third party tells the juror about the whiskey bottle, that would be an outside influence.

Moreover, the history of Rule 606(b) does not require a more narrow construction of outside influence than our plain-meaning interpretation. "By the beginning of this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimo-

ny to impeach a jury verdict." *Tanner v. United States,* 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). But exceptions to this rule were recognized in certain situations. For example, the Supreme Court allowed juror testimony in situations in which an "extraneous influence" was alleged to have affected the jury. *See, e.g., Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). And the Texas Supreme Court allowed juror testimony about "overt acts of misconduct." *See, e.g., Strange v. Treasure City,* 608 S.W.2d 604 (Tex.1980); *Trousdale v. Tex. & New Orleans R.R. Co.,* 154 Tex. 231, 276 S.W.2d 242 (1955)

In 1983, the Texas Supreme Court adopted Rule of Civil Evidence 606(b). The new rule was based on Federal Rule of Evidence 606(b), which prohibited jury testimony to impeach a verdict with two exceptions.[6] The Texas civil rule included the exception permitting a juror to testify on "whether any outside influence was improperly brought to bear upon any juror," but it did not include the other federal exception that allowed a juror to testify about "whether extraneous prejudicial information was improperly brought to the jury's attention." *See Golden Eagle,* 24 S.W.3d at 368. Three years later, this Court adopted its own Rules of Criminal Evidence, but its version of Rule 606(b) proved to be confusing and unworkable

due to a "clear internal contradiction." *See Buentello v. State,* 826 S.W.2d 610, 612 (Tex.Crim.App.1992). So when the civil and criminal rules of evidence merged in 1998, Texas Rule of Evidence 606(b) incorporated the civil version of the rule.[7]

Debate exists as to the significance of the omission of the "extraneous prejudicial information" exception in Texas Rule of Evidence 606(b). The Texas Supreme Court has explained,

> Our Court did not explain the significance of its decision to reject an exception for extraneous prejudicial information [in 1983], leaving scholars to speculate whether the Texas rules are more restrictive than the federal rule. *Compare* Addison, Conduct Unbecoming a Jury: Rule 606(b), 50 Tex. Bar J. 872, 872 (1987) (stating that the Texas rule is more restrictive), *with* Black, *supra* 20 HOUS. L. REV. at 423 (concluding that the federal exceptions for "extraneous prejudicial information" and "outside influences" are largely redundant).

*Golden Eagle,* 24 S.W.3d at 368; *see also Salazar v. Dretke,* 419 F.3d 384, 402 n. 30 (5th Cir.Tex.2005) ("The practical effect of this difference [between the Federal and state rule] is not altogether pellucid."). Due to this uncertainty, we do not believe that the history of Rule 606(b) dictates that we adopt a more narrow construction of the rule than the plain language suggests.

---

**6.** As adopted in 1975, Federal Rule of Evidence 606(b) provided,

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the ques-*

> *tion whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror....*

> (Emphasis added).

**7.** The 1998 rule was amended to also allow juror testimony to rebut a claim that a juror was not qualified to serve. *See* Tex.R. Evid. 606(b) (1998).

Presiding Judge Keller in her dissenting opinion asserts that we "discount" the difference between the Federal and state rule "because the significance of the different in language was debated in two law review articles." We would emphasize, however, that our reference to, and reliance on, a debate "in two law reviews" for support is actually derived from a Texas Supreme Court opinion, which clearly recognized the uncertainty surrounding the language choice of Rule 606(b), and not merely law review articles. *See Golden Eagle*, 24 S.W.3d at 368. Further, although the dissenting opinion also argues that "our courts of appeals seem to be in agreement" regarding the significance of "outside influence," this Court is not bound by the reasoning or results of the decisions of the courts of appeals. *See, e.g.,* Tex.R.App. P. 66.3.

■■■ Furthermore, our interpretation of Rule 606(b) is consistent with policy considerations that generally support the common-law rule against the admission of jury testimony to impeach a verdict. *See, e.g., Tanner,* 483 U.S. at 119–20, 107 S.Ct. 2739; *McDonald v. Pless,* 238 U.S. 264, 267–68, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Golden Eagle,* 24 S.W.3d at 367. Jury deliberations must be kept private to encourage jurors to candidly discuss the law and facts,[8] and during an inquiry pursuant to Rule 606(b), such privacy will be maintained because the court may not "delve into deliberations." The court may not inquire as to the subjective thought processes and reactions of the jury, so jurors should continue to feel free to raise and discuss differing viewpoints without the fear of later public scrutiny. Similarly, the jury should be protected from post-trial harassment or tampering,[9] and our holding will not result in such undue interference.

A Rule 606(b) inquiry is limited to that which occurs outside of the jury room and outside of the juror's personal knowledge and experience. Also, the risk of harassment can be minimized through other well-established safeguards such as pretrial examination of juror's prejudices and experiences and specific jury instructions informing the jury of prohibited conduct. Our construction has functioned well in the federal courts for years without opening the floodgates to the post-trial questioning of jurors.

■■■ Additionally, although there is a need for finality, "the conduct of the jurors ... may be of such a character as not only to defeat the rights of litigants but it may directly affect the administration of public justice." *McDonald,* 238 U.S. at 266, 35 S.Ct. 783. There are legitimate reasons to prohibit unfettered investigation by the jury in order to maintain confidence in judgments. "A juror must ... use the law, the evidence, and the trial court's mandates as his ultimate guides in arriving at decisions as to guilt or innocence and as to punishment." *Granados v. State,* 85 S.W.3d 217, 235 (Tex.Crim.App. 2002); *see Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App.2009). Such restrictions prevent a juror from acting as a witness against the defendant.

> The Sixth Amendment right to a trial by jury, enforceable against the states as a result of incorporation through the Fourteenth Amendment's due process clause, "implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."

8. *Golden Eagle,* 24 S.W.3d at 367.

9. *Id.*

*Pyles v. Johnson,* 136 F.3d 986, 992 (5th Cir.1998) (citations omitted) (quoting *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)). Similarly, limiting jury investigation is consistent with our case law that limits a court's consideration of evidence to that in the record. For example, the State must prove each element of an offense beyond a reasonable doubt, and the evidence supporting the sufficiency of the evidence must be contained in the record. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 911–12 (Tex.Crim.App.2010); *see Hernandez v. State,* 116 S.W.3d 26, 31 (Tex.Crim.App.2003) (holding that appellate courts cannot act as "independent scientific sleuths to ferret out the appropriate scientific materials" when the State failed to produce any evidence supporting a finding of scientific reliability).

Therefore, we return to our plain-meaning interpretation of outside influence: something originating from a source outside of the jury room and other than from the jurors themselves. The facts of this case fall squarely within our interpretation of Rule 606(b). The internet research occurred outside of the jury room and outside of deliberations—the juror conducted a private investigation at her home during an overnight break. In addition, the information obtained originated from a source on the internet, a source other than the jurors themselves. The internet research constituted an "outside influence." As a result, at the hearing on the motion for new trial, Rule 606(b) would permit the court to question the jury, without delving into deliberations, and to determine whether the "outside influence" impacted the outcome of the case. *See id.* (explaining that juror testimony is permitted on the issue of juror misconduct "provided such testimony does not require delving into deliberations").

An inquiry into the effects of the juror's private internet investigation does not require us to "delve into deliberations." [10] Trial courts often instruct jurors that they are to consider only the testimony heard in court and the physical exhibits admitted into evidence, that they are not to speak with anyone about the case, and that they are not to visit the scene of the crime. Consistent with these instructions, a trial court should be able to inquire as to whether jurors received such outside information and the impact it had on their verdict without delving into their actual deliberations. This can be done by making an objective determination as to whether the outside influence likely resulted in injury to the complaining party—that is, by limiting the questions asked of the jurors to the nature of the unauthorized information or communication and then conducting an objective analysis to determine whether there is a reasonable possibility that it had a prejudicial effect on the "hypothetical average juror." *See, e.g., Manley v. AmBase Corp.,* 337 F.3d 237, 252 (2d Cir.2003) ("[C]ourts must apply an 'objective test,' ... focusing on two factors: (1) 'the nature' of the information or contact at issue, and (2) 'its probable effect on a hypothetical average jury.'"); *United States v. Lloyd,* 269 F.3d 228, 238 (3d Cir.2001) ("In examining for prejudice, we

---

10. The Texas Supreme Court has explained that a "juror may testify about jury misconduct provided it does not require delving into deliberations. For example, a juror could testify that another juror improperly viewed the scene of the events giving rise to the litigation. Likewise, a juror could testify about reasons for disqualifying another juror provided the testifying juror's knowledge was gained independent of deliberations." *Golden Eagle,* 24 S.W.3d at 370 (discussing Texas Rule of Civil Procedure 327(b), which has language parallel to the relevant portions of Rule 606(b)).

must conduct 'an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror.' "); *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir.1991) ("The proper procedure therefore is for the judge to limit the questions asked the jurors to whether the communication was made and what it contained, and then, having determined that the communication took place and what exactly it said, to determine—without asking the jurors anything further and emphatically without asking them what role the communication played in their thoughts or discussion—whether there is a reasonable possibility that the communication altered their verdict.").

The trial court abused its discretion in excluding, pursuant to Rule 606(b), the jurors' testimony and affidavits offered by Appellant at the hearing on his motion for new trial, and the court of appeals erred to hold otherwise. The internet research conducted by a juror about the effects of date rape drugs constitutes an "outside influence." Therefore, we reverse the judgment of the court of appeals and remand the case to the trial court for a new hearing on Appellant's motion for new trial consistent with this opinion.

KELLER, P.J., filed a dissenting opinion in which COCHRAN, J., joined. COCHRAN, J., filed a dissenting opinion in which KELLER, P.J., and PRICE and WOMACK, JJ., joined.

KELLER, P.J., filed a dissenting opinion in which COCHRAN, J., joined.

The Court decides that a juror's internet research constituted an "outside influence" for the purpose of determining whether jurors could testify about the matter in a

proceeding to challenge the jury's verdict. I disagree, because the text and background of the rule indicate that the phrase "outside influence" carries a narrower meaning than given by the Court today. I would hold that the internet research in this case was not an outside influence because the information did not involve a communication from a person outside the jury. I would further hold that this construction does not violate appellant's constitutional rights.

**A. Admissibility under Rule 606(b)**

In construing the meaning of a rule of evidence, an appellate court "should attempt to effectuate the plain language absent important countervailing considerations." [1] The courts have more flexibility in interpreting court rules than in construing statutes, and a court can look to extra-textual factors even absent ambiguity in the language of the rule or absurd results flowing from a plain-meaning interpretation.[2]

The current version of Rule 606(b), effective March 1, 1998, provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any ju-

---

1. *Lopez v. State,* 253 S.W.3d 680, 685 (Tex. Crim.App.2008).

2. *Id.*

ror; or (2) to rebut a claim that the juror was not qualified to serve.[3]

The language of the rule imposes a broad prohibition against using juror testimony about deliberations to impeach a verdict, but the rule nevertheless has limits. The rule does not prohibit juror testimony about matters or statements occurring before deliberations.[4] The jury deliberation process begins "after the close of the evidence and the jury charge, when the jury retires to weigh the evidence to arrive at a verdict."[5] And the prohibition in the rule applies only to post-verdict testimony.[6] And even with respect to post-verdict testimony about deliberations, the rule contains two exceptions, the first of which—outside influence—is at issue in this case.

In construing the meaning of the "outside influence" exception, it is necessary to address the history of Rule 606(b)'s development. The rule against using juror testimony to impeach the verdict originated in England with an opinion by Lord Mansfield in 1785.[7] By the beginning of the twentieth century, if not earlier, "the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a verdict."[8] Likewise, "[e]arly Texas decisions followed the Lord Mansfield rule and flatly prohibited jurors from impeaching the verdict."[9]

In the early case of *Mattox v. United States,* the United States Supreme Court recognized an exception to the common-law rule for situations in which an "extraneous influence" was alleged to have affected the jury.[10] Early decisions of the Texas Supreme Court created an exception that allowed jurors to talk about "overt acts of misconduct,"[11] and that exception had some basis in a discussion from *Mattox.*[12] The "overt act" rule was criticized, however, "because of the difficulty in drawing a line between acts and mental processes."[13] One commentator claimed that the Texas rule allowed "a far wider scope of inquiry into the jury's deliberations than any other state."[14]

When the Federal Rules of Evidence were adopted in 1975, they included Rule 606(b), which provided:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's atten-*

---

3. Tex.R. Evid. 606(b).

4. *Golden Eagle Archery v. Jackson,* 24 S.W.3d 362, 371 (Tex.2000).

5. *Id.*

6. *Id.* at 375.

7. *Tanner v. United States,* 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *Golden Eagle Archery,* 24 S.W.3d at 367.

8. *Tanner,* 483 U.S. at 117, 107 S.Ct. 2739.

9. *Golden Eagle Archery,* 24 S.W.3d at 367.

10. *Tanner,* 483 U.S. at 117, 107 S.Ct. 2739; *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892).

11. *Golden Eagle Archery,* 24 S.W.3d at 367.

12. *See Mattox,* 146 U.S. at 148, 13 S.Ct. 50 (quoting Justice Brewer in *Perry v. Bailey,* 12 Kan. 539, 545 (1874)).

13. *Golden Eagle Archery,* 24 S.W.3d at 368.

14. *Id.* (quoting 1 McCormick & Ray, Texas Law of Evidence § 1612 (Texas Practice 1980)).

*tion or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.[15]

As can be seen from its language, the federal rule contained two exceptions to the general rule prohibiting juror testimony that impeached the verdict: one involving "extraneous prejudicial information" and the other involving "any outside influence." The latter exception is contained in the modern Texas rule, but the former is not. The report of the United States House Judiciary Committee explained that the federal rule would permit a juror to testify "as to the influence of extraneous prejudicial information brought to the jury's attention (e.g. a radio newscast or a newspaper account) or an outside influence which improperly had been brought to bear upon a juror (e.g. a threat to the safety of a member of his family)."[16] This passage in the report suggests that the "extraneous prejudicial information" exception was aimed at a juror's acquisition of information that did not involve a communication from a live person to the juror. The Judiciary Committee gave the examples of a juror reading the newspaper or listening to the radio, but other examples could include watching television or, as in the present case, surfing the internet. By contrast, this passage from the report sug-

gests that the "outside influence" exception was aimed at a communication from a live person to the juror about the case.

In 1983, the Texas Supreme Court adopted a version of Rule 606(b) in its rules of civil evidence. The Texas civil rule was identical to the federal rule except that it omitted the "extraneous prejudicial information" exception.[17] The Texas Supreme Court "did not explain the significance of its decision to reject an exception for extraneous prejudicial information."[18] One scholar suggested that the omission signified that the Texas civil rule was more restrictive than its federal counterpart, while another scholar suggested that the federal exceptions for "extraneous prejudicial information" and "outside influences" were largely redundant.[19]

Our state courts of appeals came down on the side of construing the Texas civil rule more restrictively, by construing the "outside influence" exception as not encompassing the types of situations that the House Judiciary Committee suggested were covered by the federal "extraneous prejudicial information" exception. While the federal rule appears to contemplate and has been construed to permit juror testimony about a juror's reliance upon a newspaper article,[20] the Texas civil rule has been interpreted more restrictively. Four state courts of appeals—in Houston, San Antonio, and Corpus Christi—have held that the jurors' discussion of a news-

---

**15.** FED.R.EVID. 606(b) (1975) (emphasis added).

**16.** House Comm. on Judiciary, FED.R.EVID., H.R.Rep. No. 650, 93d Cong., 1st Sess., p. 9 (1973).

**17.** *See* TEX R. CIV. EVID. 606(b) (1997); *Golden Eagle Archery*, 24 S.W.3d at 368.

**18.** *Golden Eagle Archery*, 24 S.W.3d at 368.

**19.** *Id.* (citing Addison, *Conduct Unbecoming a Jury: Rule 606(b)*, 50 TEX. BAR J. 872, 872 (1987) (more restrictive) and Black, *Article VI: Witnesses*, 20 HOUS. L.REV. 409, 423 (1983) (redundant)).

**20.** *See* House Comm. on Judiciary, H.R.Rep. No. 650, p. 9; *Peveto v. Sears*, 807 F.2d 486, 489 (5th Cir.1987); *United States v. Straach*, 987 F.2d 232, 241 (5th Cir.1993); *Gall v. Parker*, 231 F.3d 265, 333 (6th Cir.2000). *See also Mattox*, 146 U.S. at 150, 13 S.Ct. 50.

paper or magazine article did not constitute an "outside influence."[21] These courts reasoned that an outside influence "must emanate from outside the jury and its deliberations,"[22] and these courts have expressed a narrow view of what emanated from outside the jury. According to the Fourteenth Court, in *Baley*, "outside influence ... does not include all information not in evidence, unknown to the jurors prior to trial, acquired by a juror and communicated to one or more other jurors between the time the jurors received their instructions from the court and the rendition of the verdict."[23] The *Baley* court further expounded, "Information gathered by a juror and introduced to other jurors by that juror—even if it were introduced specifically to prejudice the vote—does not constitute outside influence."[24] The views expressed in *Baley* were later echoed in the *Perry* opinion from the First Court of Appeals and in opinions from the appellate courts in Corpus Christi, Austin, and El Paso.[25]

Meanwhile, in 1986, we enacted our own rules of evidence, which contained a different version of Rule 606(b). Our Rule 606(b) was internally contradictory—it contained the original language of the federal rule limiting juror testimony, but the federal exceptions were replaced with an exception that swallowed the rule: "except that a juror may testify as to any matter relevant to the validity of the verdict or indictment."[26] In *Buentello v. State*, we gave effect to the "broad, all-encompassing" language of this so-called exception to allow juror testimony on any matter relevant to the validity of the verdict.[27]

But that changed in 1998, with the merger of the civil and criminal rules into a single set of rules of evidence. With one added exception not relevant here, the new (and current) version of Rule 606(b) is the rule from the civil side of our court system. That change was intentional. And though opinions from the courts of appeals are not binding upon us, those opinions that existed at the time we adopted the rule deserve special consideration.

As we have discussed already, those opinions, based largely on *Baley*, construed the Texas civil rule more restrictively than its federal counterpart. Appellant contends that *Baley* is flawed and should be disregarded. He first argues that the Supreme Court of Texas has rejected *Baley*'s definition of "deliberations." That is true, but irrelevant. The definition of "deliberations" was a separate aspect of the discussion in *Baley* from the meaning of "outside influence": first the *Baley* court had to decide whether discussions occurring before the jury charge was read constituted "deliberations," and then, if so, the court had to decide whether an outside

---

21. *Baley v. W/W Interests*, 754 S.W.2d 313, 315–16 (Tex.App.-Houston [14th Dist.] 1988, writ denied) (newspaper article); *Mercy Hospital of Laredo v. Rios*, 776 S.W.2d 626, 629–30 (Tex.App.-San Antonio 1989, writ denied) (same); *King v. Bauer*, 767 S.W.2d 197, 198 (Tex.App.-Corpus Christi 1989, writ denied) (same); *Perry v. Safeco Ins. Co.*, 821 S.W.2d 279, 281 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (magazine article).

22. *Baley*, 754 S.W.2d at 316; *King*, 767 S.W.2d at 198; *Perry*, 821 S.W.2d at 281.

23. *Baley*, 754 S.W.2d at 316.

24. *Id.*

25. *Perry*, 821 S.W.2d at 281 (quoting *Baley*); *Soliz v. Saenz*, 779 S.W.2d 929, 931–32 (Tex. App.-Corpus Christi 1989, writ denied); *Nelson v. Clements*, 831 S.W.2d 587, 591 (Tex. App.-Austin 1992, writ denied). *Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 272 (Tex. App.-El Paso 1994, writ denied).

26. *See* Tex.R.Crim. Evid. 606(b) (1996).

27. 826 S.W.2d 610, 613 (Tex.Crim.App.1992).

influence intruded upon those discussions.[28] The Supreme Court's rejection of *Baley*'s definition of "deliberations" says nothing about its view of *Baley*'s definition of "outside influence." Moreover, though it did not explicitly adopt the specific statements in *Baley* regarding the meaning of "outside influence," the Supreme Court cited *Baley* with approval in connection with its discussion of the "outside influence" issue.[29]

Appellant also argues that we should disregard *Baley* because it is inconsistent with the Texas Supreme Court's statement that "a juror could testify that another juror improperly viewed the scene of the events giving rise to the litigation."[30] Appellant contends that this "holding and the reasoning on which it is based appears to support [his] contention that 'outside influence' may, indeed, include information obtained by a juror and relayed to other jurors." But the Supreme Court's statement was not a holding; it was *dictum*. The *Golden Eagle Archery* case did not involve a juror viewing the scene of the crime, nor did it involve any type of juror investigation.[31] And the Supreme Court did not engage in a reasoned discussion to support its *dictum;* the statement was an offhand illustration of the Supreme Court's conclusion that "[a] juror may testify about jury misconduct provided it does not require delving into deliberations."[32]

Appellant further contends that *Baley* delivered its holding "out of the blue," that its holding was not supported by the cases it cited, and that its holding was contrary to the language of the rule, as asserted by the dissent.[33] But the *Baley* holding actually had roots in an earlier case from the Fourteenth Court: *Robinson Electric Supply Co. v. Cadillac Cable Corp.*[34] It is true that *Robinson Electric Supply Co.* dealt with a factually distinct situation—the jury's decision to consider and calculate prejudgment interest—that was not alleged to have resulted from any sort of investigation or acquisition of information.[35] But with respect to interpreting identical language in Texas Rule of Civil Procedure 327(b), the court of appeals said:

> Important in interpreting the Rule, however, is the fact that the Texas Supreme Court expressly deleted the proposal by the Rule's drafters in the Liaison Committee that Rule 327(b) also allow testimony on whether "extraneous prejudicial information was improperly brought to the jury's attention." [Citation omitted]. This inquiry is permitted by Federal Rule of Evidence 606(b), and yet the Texas Supreme Court expressly chose to delete this apparently more liberal test for jury misconduct and instead opted for the more stringent "out-

---

28. *See Baley*, 754 S.W.2d at 316.

29. *See Golden Eagle Archery*, 24 S.W.3d at 370.

30. *See id.*

31. *See id., passim.*

32. *Id.* at 370. Another state's high court has expressed ambivalence on the matter, even under broader language patterned after the federal rule, citing potentially conflicting cases on whether a juror's visit to the crime scene constitutes extraneous prejudicial infor-

mation. *Watkins v. Taylor Seed Farms*, 295 Ark. 291, 293, 748 S.W.2d 143, 144 (1988).

33. *See Baley,* 754 S.W.2d at 320–21 (Ellis, J., dissenting).

34. 706 S.W.2d 130 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.), cited in *Baley*, 754 S.W.2d at 316.

35. *See Robinson Electric Supply Co.,* 706 S.W.2d at 131–32.

side influence" test.[36]

In another case, our Court has already commented in passing that the federal rule "is more expansive than Texas Rule 606(b), because Federal Rule 606(b) permits jurors to testify about 'whether extraneous prejudicial information was brought to the jury's attention.' "[37] Observing the difference between the language of the two rules, the Fifth Circuit has remarked that "[t]he practical effect of this difference is not altogether pellucid" but has noted the argument that "extraneous prejudicial information" is a separate or broader concept than "outside influence."[38] The cases cited in support of that argument involved "situations in which the jurors bring outside information into deliberations themselves" and usually involved "tests or experiments that jurors had conducted themselves to help them evaluate the evidence, juror visits to the scene of the alleged accident, and so on."[39] And since our adoption of the civil version of the rule, the pronouncements made by the Fourteenth Court in *Baley* have been echoed by other courts of appeals, sometimes in criminal cases.[40]

The Court discounts the significant difference in the wording between the federal and Texas versions of Rule 606(b) as well as the historical background in which the Texas rule was adopted. The Court suggests that it can do so because the significance of the difference in language was debated in two law review articles. But whatever dispute or uncertainty there is or may have been among scholars or the federal courts about the meaning of the Texas rule, our own courts of appeals seem to be in agreement: the term "outside influence" does not encompass information gathering by a juror that does not involve communicating with other people. Activities such as reading a newspaper or researching on the internet, while covered by the federal rule, are not covered by the Texas rule. Though at least two out-of-state jurisdictions have held or suggested that internet research constitutes an external matter to which a juror may testify, those jurisdictions have the "extraneous prejudicial information" exception that is in the federal rule.[41] Given the more restrictive nature of the Texas rule, we should conclude, in line with the views held by our state courts of appeals, that internet research does not

36. *Id.* at 132–33.

37. *Lucero v. State*, 246 S.W.3d 86, 95 n. 10 (Tex.Crim.App.2008).

38. *Salazar v. Dretke*, 419 F.3d 384, 402 n. 30 (5th Cir.2005) (citing *United States v. Martinez–Moncivais*, 14 F.3d 1030, 1036 n. 3 (5th Cir.1994)). *See Martinez–Moncivais, supra.*

39. *Martinez–Moncivais, supra.*

40. *See Franks v. State*, 90 S.W.3d 771, 799 (Tex.App.-Fort Worth 2002, pet. ref'd, untimely filed) ("It has often been held in the civil context that information gathered by a juror and introduced to the other jurors by that juror does not add up to 'outside influence,' even if introduced specifically to prejudice the vote."); *Hines v. State*, 3 S.W.3d 618, 623 (Tex.App.-Texarkana 1999, pet. ref'd) ("While

case law has not clearly identified what constitutes an outside influence, it has clearly rejected certain conduct as constituting outside influence. . . . Thus, it has been held that information gathered by a juror and introduced to the other jurors by that juror does not amount to outside influence, even if introduced specifically to prejudice the jurors' votes."); *Williams v. Viswanathan*, 64 S.W.3d 624, 636 (Tex.App.-Amarillo 2001, no pet.).

41. *State v. Abdi*, 2012 VT 4, 45 A.3d 29 (2012) (internet research about Somali religion and culture); *Stephenson v. State*, 742 N.E.2d 463, 477 (Ind.2001) (observing that there was no evidence that the juror was exposed to outside influences, including "researching on the Internet"); *see also Mitchell v. State*, 726 N.E.2d 1228, 1238 (Ind.2000) (citing Indiana rule as including the "extraneous prejudicial information" exception).

constitute an outside influence so long as the juror does not receive a communication from a person outside the jury. In the present case, The juror's act of viewing a webpage about the effects of date-rape drugs did not constitute a communication from another person.

Because the juror did not receive a communication from a person outside the jury, I would hold that the juror was not subject to an "outside influence." [42] Because the juror was not subject to an outside influence, her testimony was inadmissible under Rule 606(b).

## B. Constitutionality of Rule 606(b)

In *Tanner v. United States*, the Supreme Court upheld the constitutionality of the federal version of Rule 606(b) when the trial judge excluded juror testimony about one of the jurors being intoxicated. [43] The Court explained that "long-recognized and very substantial concerns" [44] supported protecting jury deliberations from post-verdict scrutiny:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is

not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct. [45]

The Court further found that a defendant's Sixth Amendment interests in an unimpaired jury were "protected by several aspects of the trial process." [46] First, the suitability of an individual for jury service could be examined in voir dire. [47] Second, the jury can be observed during trial by the court, counsel, and court personnel. [48] Third, "jurors are observable by each other, and may report inappropriate juror behavior to the court *before* they render a verdict." [49] Finally, "after the trial a party may seek to impeach the verdict by nonjuror evidence of misconduct." [50] The Supreme Court characterized "juror testimony as 'one particular

---

**42.** I recognize that communications from a person outside the jury are not limited to face-to-face or contemporaneous contact. A communication can be conveyed over the telephone, by mail, or over the internet. Such communication might include leaving a message on an answering machine, sending a letter, sending an email or instant message, or posting on a message board. But, as with reading a newspaper, viewing a webpage will not ordinarily constitute a communication from another person to the juror. In an unusual case, a webpage could be a communication from another person to a juror if it was created or modified with the purpose of communicating with a specific juror about a case. On the other hand, a message board posting would *not* be a communication to a juror if made by and for participants who

were completely unaware of the juror and the case.

**43.** 483 U.S. at 126–27, 107 S.Ct. 2739.

**44.** *Id.* at 127, 107 S.Ct. 2739.

**45.** *Id.* at 120–21, 107 S.Ct. 2739 (citation and parenthetical omitted).

**46.** *Id.* at 127, 107 S.Ct. 2739.

**47.** *Id.*

**48.** *Id.*

**49.** *Id.* (emphasis in original).

**50.** *Id.*

kind of evidence inadmissible under the Federal Rules,'" and held that a hearing to include that kind of evidence was unnecessary.[51]

In *Golden Eagle Archery*, the Texas Supreme Court upheld the constitutionality of the current version of Texas Rule of Evidence 606(b) when the trial judge excluded juror testimony about undisclosed juror bias.[52] Looking to *Tanner* for guidance, the Texas Supreme Court found several applicable protections provided in Texas civil cases.[53] First, litigants may question potential jurors at voir dire, as well as exercise for-cause and peremptory challenges.[54] Second, the trial judge can question jurors during trial and "take corrective measures such as instructing the jury, dismissing particular jurors, or declaring a mistrial."[55] Finally, the Texas Supreme Court observed that Texas rules concerning attorneys' post-trial juror contact are more permissive than the federal rules.[56]

Appellant contends that *Golden Eagle Archery* can be distinguished because there is no constitutional right of confrontation in civil cases. But jurors are not "witnesses" in a classic sense, "with conse-quent automatic entailment of the confrontation clause, whenever a juror voices any extra-record facts."[57] Furthermore, *Tanner* was a criminal case, and though it addressed a different constitutional right (to an unimpaired jury), "very substantial concerns" still apply when addressing irresponsible or improper juror behavior that involves jurors considering information that was not presented at trial. These concerns include (1) keeping jury deliberations private to encourage candid discussion of a case, (2) protecting jurors from post-trial harassment or tampering, and (3) protecting the need for finality.[58] "As one authority explained, '[t]he question that has vexed courts for years, is how far can they go in opening verdicts to attack on such grounds before the cure becomes worse than the disease.'"[59] The answer is, not far at all.[60]

In any event, procedural protections exist to help safeguard a defendant's Confrontation–Clause interests. Potential jurors can be questioned and instructed regarding internet research during voir dire. The trial judge can instruct the jurors during trial and before deliberations

---

51. *Id.*

52. 24 S.W.3d at 374–75.

53. *Id.* at 375.

54. *Id.*

55. *Id.*

56. *Id.*

57. *United States ex rel. Owen v. McMann*, 435 F.2d 813, 818 n. 5 (2nd Cir.1970).

58. *Golden Eagle Archery*, 24 S.W.3d at 366–67.

59. *Id.* at 367 (citing 1 Goode et al., Guide to the Texas Rules of Evidence· Civil and Criminal, § 606.02 (Texas Practice 1993)).

60. In a concurring opinion in *Golden Eagle Archery*, Justice Hecht would extend the prohibition against juror questioning in civil cases to any questioning that occurs after deliberations have begun. Although I do not find that sort of extension to be appropriate for criminal cases, the policy reasons he cites certainly apply with even greater force to our more limited rule: "[T]o allow one juror to attack another juror's ... conduct is too great an encouragement of post-trial trials of the jury" and poses "a significant burden on citizens who give of their time to serve as jurors with little benefit to the process. Jurors come to decide disputes, not to be drawn into them." 24 S.W.3d at 376 (Hecht, J. concurring).

not to engage in internet research.[61] Further, a juror's use of internet research can be brought to the trial judge's attention before verdict, and the trial judge can take remedial action, which could include issuing further instructions, dismissing a juror, or even declaring a mistrial. Given the available procedural protections and the weighty interests that favor insulating the jurors' deliberations from scrutiny, I conclude, and would hold, that Texas Rule of Evidence 606(b) does not violate a defendant's constitutional right of confrontation.

I respectfully dissent.

## OPINION

COCHRAN, J., filed a dissenting opinion in which KELLER, P.J., and PRICE and WOMACK, JJ., joined.

I respectfully dissent. The statements in the juror affidavits offered in this case may constitute "extraneous prejudicial information" under Federal Rule 606(b), but the Texas Supreme Court deliberately did not adopt that exception to the general prohibition against jurors impeaching their own verdict in Texas Rule of Evidence 606(b). We do not have the authority to read that exception into the rule by ourselves.

Historically, once an English trial was over, the advocates commenced to "try the jury," by harassing and cajoling them into admitting that they or another juror had misbehaved in some respect during the trial. This practice came to an abrupt end when Lord Mansfield declared, in 1785, that English courts could not consider juror affidavits or testimony attesting to their own misconduct during jury deliberations.[1] Lord Mansfield's rule, that "jurors may not impeach their verdict,"[2] found widespread acceptance in the United States as well.[3]

Early Texas decisions followed Lord Mansfield's prohibitory rule religiously,[4] but, in 1905, the Texas Legislature adopted an exception to that rule, giving trial courts discretion to receive juror testimony about their misconduct during deliberations.[5] Given this unfettered discretion, the pendulum began to swing, and Texas courts soon allowed "a far wider scope of inquiry into the jury's deliberations than any other state."[6] Frequently, the jury's verdict was being reversed for "trivial misconduct."[7] Sure enough, the pendulum swung back. In 1983, the Texas Supreme Court adopted Rule 606(b), which generally bars post-verdict juror affidavits or testimony to attack the validity of its

61. See Abdi, 2012 Vt. at ¶ 25, 45 A.3d at 38 ("[I]t may well be time to consider a stronger and more technology specific admonition" regarding research on the internet.).

1. Vaise v. Delaval, 99 Eng. Rep. 944 (K.B. 1785).

2. Id.

3. See 8 JOHN WIGMORE, EVIDENCE § 2352 (McNaughton rev.1961).

4. See St. Louis S.W. Ry. Co. v. Ricketts, 96 Tex. 68, 70 S.W. 315, 317 (1902) (stating that court had "uniformly denied the competency" of juror affidavits or testimony to attack the

jury's verdict based on claims of "irregularities and improprieties of different kinds"; rejecting juror affidavits that said foreman told deliberating jurors that he had lived near depot that was subject of litigation and that it was not heated or lit, thus plaintiffs' testimony was true and defendant's witnesses' conflicting testimony was false).

5. See Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 367 (Tex.2000) (discussing the history of TEX.R. EVID. 606(b)).

6. 1 C. McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE § 397, at 338 n. 73 (2d ed.1956).

7. See id. § 394, at 332.

verdict. In 1998, when the civil and criminal evidentiary rules were merged, Rule 606(b), as promulgated by the Texas Supreme Court, became applicable to criminal cases as well as civil cases. Our interpretation and application of that rule should follow that of our state supreme court.

Rule 606(b) serves several important public policy interests. First, as the United States Supreme Court has stated, it protects jurors from harassment:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication, and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something that might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict.[8]

Second, it protects the sanctity of the jury deliberation room and thereby encourages the jurors to engage in full and frank discussions.[9] Jurors would be hesitant to express their opinions freely if they thought that their statements would later be held up for public scrutiny.[10] Third, allowing jurors to attack their own verdicts would undermine the finality of judgments.[11] Judges "would become Penelopes, forever engaged in unraveling the webs they wove."[12] Fourth, allowing jurors to attack the integrity of their verdicts would invite tampering with the process.[13] For example, a juror who reluctantly joined a verdict may be sympathetic to later overtures by the losing party to view his earlier consent as being based upon impermissible considerations.[14]

At bottom, the best justification for Rule 606(b) prohibiting jurors from impeaching their own verdicts is that the rule protects a good system that cannot be made perfect. As the Supreme Court stated, "There is little doubt that postverdict in-

**8.** *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

**9.** *Id.* at 267–68, 35 S.Ct. 783 (discussing need to prevent "what was intended to be private deliberation" from being made subject to public scrutiny "to the destruction of all frankness and freedom of discussion").

**10.** *See Shillcutt v. Gagnon*, 827 F.2d 1155, 1159 (7th Cir.1987) (noting that a "fruitful exchange of ideas and impressions among jurors" depends upon "some assurance that what is said in the jury room will not reach a larger audience").

**11.** *Tanner v. United States*, 483 U.S. 107, 120, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (allegations of juror misconduct during deliberations would "seriously disrupt" finality).

**12.** *Jorgensen v. York Ice Machinery Corp.*, 160 F.2d 432, 435 (2d Cir.1947) (Judge Learned Hand) ("[I]t would be impracticable to im-

pose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court. It is doubtful whether more than one in a hundred verdicts would stand such a test; and although absolute justice may require as much, the impossibility of achieving it has induced judges to take a middle course, for they have recognized that the institution could not otherwise survive; they would become Penelopes, forever engaged in unravelling the webs they wove. Like much else in human affairs, its defects are so deeply enmeshed in the system that wholly to disentangle them would quite kill it.").

**13.** *See United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir.1976) (purpose of rule is to prevent "fraud by individual jurors who could remain silent during deliberations and later assert that they were influenced by improper considerations").

**14.** *Id.*

vestigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it." [15]

On the other hand, the rule exacts great costs as well. Verdicts that are based upon information and opinions that have not been introduced into evidence, a misunderstanding of the applicable legal principles, or the influence of threats or bribes are unfair to the losing party.[16] Rule 606(b) is an attempt, albeit imperfect, to strike an appropriate balance between the need the protect jurors, the verdict, and the sanctity of juror deliberations against the strongly competing desire to rectify a verdict tainted by irregularity.

Because of the high cost of insulating a verdict tainted by irregularity, Federal Rule 606(b) [17] created two narrow exceptions to the prohibition against post-verdict juror affidavits and testimony. A juror may testify to whether (A) "extraneous prejudicial information was improperly brought to the jury's attention," or whether (B) "an outside influence was improperly brought to bear on any juror[.]" [18] These exceptions deal with very different situations and should not be confused. They are not interchangeable.

The first, "extraneous prejudicial information," refers to any information that is "conveyed to the jury through extrarecord sources," [19] unless that information is common knowledge in the community. Such information frequently could have been, but was not, introduced as evidence at trial. The problem with anyone, juror or non-juror, providing this extrarecord material is that the parties do not have an opportunity to meet, rebut, or explain that information which may, or may not, be accurate.[20] Under this exception, juror affidavits and testimony that admit to reading newspaper articles, listening to radio programs, or watching television reports about the trial may be offered to attack the validity of the verdict.[21] A juror's

---

**15.** *Tanner*, 483 U.S. at 120, 107 S.Ct. 2739.

**16.** 1 Steven Goode et al., Guide to the Texas Rules of Evidence: Civil and Criminal, § 606.2, at 535 (Tex. Prac. Series 1993).

**17.** Federal Rule 606(b) reads as follows:

(b) **During an Inquiry Into the Validity of a Verdict or Indictment.**

(1) **Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) **Exceptions.** A juror may testify about whether:

(A) extraneous prejudicial information was improperly brought to the jury's attention;

(B) an outside influence was improperly brought to bear on any juror; or

(C) a mistake was made in entering the verdict on the verdict form.

**18.** A third exception, whether "a mistake was made in entering the verdict on the verdict form," was adopted in 2006 to permit juror affidavits and testimony to prove a clerical error in recording the verdict. *See* Fed. R.Evid. 606(b) advisory committee's note on 2006 amendments.

**19.** 3 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 249, at 70 (2d ed.1994) ("Mueller").

**20.** *Id.* at 71.

**21.** *See, e.g., Mattox v. United States*, 146 U.S. 140, 149–51, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (trial judge erred in excluding juror affidavits admitting to reading a newspaper article during deliberations stating that defendant had been tried for his life once before, that the evidence against him was very strong, that the argument of the prosecution was such that

affidavit concerning his or another juror's conduct of looking up prejudicial information about the parties or the trial on the Internet and reporting his findings back to other jurors may be admissible under this particular exception.[22]

The second exception, an "outside influence" improperly brought to bear on a juror, refers to those blatant, subtle, or even unconscious acts by outsiders to affect the verdict or interfere with the deliberations. In simple terms, it refers to jury tampering.[23] Obviously, a juror's affidavit or testimony concerning someone's attempts to bribe, blackmail, or threaten any juror would qualify under this exception.[24]

Inadvertent, but improper, statements by a bailiff to the jury[25] or protesters marching outside the courthouse with threatening signs might also qualify if they are likely to affect the jury's verdict.

The drafters of the Texas Rules of Civil Evidence recommended that the Supreme Court adopt Federal Rule 606(b) verbatim, thus including the two exceptions to the general prohibition against juror affidavits or testimony to attack the validity of the verdict.[26] But the Texas Supreme Court intentionally deleted the "extraneous prejudicial information" exception.[27] "Although it offered no explanation for its action, the most plausible explanation is

defendant's friends gave up all hope, and that the jury's deliberations would probably not last over an hour) MUELLER, *supra* note 19, at 71 ("The exception allows proof that one or more members of the jury brought to trial specific personal knowledge about the party or controversy or acquired such knowledge from sources outside the courtroom during trial or deliberations, often by way of media sources (newspaper, radio, television).") (footnotes omitted).

**22.** *See Stebner v. Assoc. Materials, Inc.*, 356 Mont. 520, 234 P.3d 94, 98 (2010) (juror's affidavit admitting that she conducted and shared internet research on the term "preponderance" prior to jury reaching verdict in breach of warranty case could be considered in deciding whether her research constituted extraneous prejudicial information that was improperly brought to jury's attention; concluding that it was not prejudicial and did not affect jury's verdict); *cf. State v. Patino*, 207 N.C.App. 322, 699 S.E.2d 678, 684 (2010) ("Extraneous prejudicial information is 'information dealing with the defendant or the case which is being tried, which information reaches a juror without being introduced in evidence.' Dictionary definitions of legal terms researched and read to the jury by the foreperson are not extraneous prejudicial information and cannot be used to impeach a jury's verdict.") (citations omitted).

**23.** *McDonald v. Pless*, 238 U.S. 264, 267–68, 35 S.Ct. 783, 59 L.Ed. 1300 (1915) (while the prohibition against post-verdict juror affidavits or testimony "may often exclude the only

possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' ") (citations omitted).

**24.** *See Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ("In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial"); *Jorgensen v. York Ice Machinery Corp.*, 160 F.2d 432, 435 (2d Cir.1947) ("bribery" of juror is a matter on which juror affidavits may be received).

**25.** *See United States v. Greer*, 620 F.2d 1383, 1385–86 (10th Cir.1980) (jurors could testify to lunch break conversation with deputy marshal who told them about terms and effects of Youth Corrections Act and different types of possible sentencing).

**26.** *See* S. GOODE ET AL. *supra* note 16, § 606.2, at 540. Professors Goode, Wellborn, and Sharlot explain, "As proposed by the Liaison Committee, Texas Civil Rule 606(b) would have contained both the 'extraneous prejudicial information' and 'outside influence' exceptions."

**27.** *Id.*

that the Court was consciously trying to curtail the widespread, and widely criticized, practice of 'trying the jury.' " [28] Professors Goode, Wellborn, and Sharlot (all three of whom had been on the Liaison Committee that drafted the 1983 rules), explain that, if the Supreme Court had "retained the malleable 'extraneous prejudicial information' exception, lawyers would still have had a strong incentive to contact jurors after a verdict was rendered." [29] Indeed, that is precisely what happened in criminal cases when this Court enacted its vague and amorphous exception to Rule 606(b) in 1986.[30] It was for that very reason that this Court adopted the Supreme Court's version of Rule 606(b) in 1998.[31] Having adopted the Supreme Court's version of the rule, we ought not change its meaning and content without first (1) consulting that court, and (2) changing the wording of the rule to explicitly incorporate the federal exception for "extraneous prejudicial information."

Perhaps it would be a good idea to amend Rule 606(b) to allow courts to consider juror affidavits and testimony about a juror's Internet research and her report of that research back to other jurors. But until Rule 606(b) is formally amended, we are not free to do so informally.

I respectfully dissent.

---

**28.** *Id.*

**29.** *Id.*

**30.** Rule 606(b) of the Texas Rules of Criminal Evidence read as follows:

> **(b) Inquiry Into Validity of Verdict or Indictment**
> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify as to any matter relevant to the validity of the verdict or indictment.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

This rule was deceptively worded and internally contradictory. First, it prohibits the jurors from testifying to any matter occurring during its deliberations and then it contains an exception that states that jurors may testify as to anything relevant to the validity of the verdict. That exception completely swallowed the rule and "was the source of much confusion[.]"

**31.** Goode et al., *supra* note 15, § 606.3, at 193 (2001 Supp.) ("New Rule 606(b) changes dramatically the extent to which jurors may testify concerning the validity of a criminal verdict or indictment.... Presumably, the Court of Criminal Appeals decided to align criminal practice with civil practice."); *see Hines v. State,* 3 S.W.3d 618, 621 (Tex.App.-Texarkana 1999, pet. ref'd) ("[T]he rule in civil cases is now the rule in criminal cases: jurors may testify only to whether any outside influence was brought to bear upon a juror."); *In re S.P.,* 9 S.W.3d 304, 308–09 (Tex.App.-San Antonio 1999, no pet.) (noting that courts in criminal cases should look to civil cases for guidance on what constitutes an "outside influence"; jury's discussion about the thickness of defendant's probation file, which was not introduced into evidence, was not an "outside influence").