# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00437-CR

---

**Jerson Ramiro Sanchez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 119TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. B-17-0650-SA, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jerson Ramiro Sanchez of aggravated sexual assault of a child and sentenced him to five years' imprisonment. On appeal, he argues that the trial court should have granted his motion for new trial based on juror misconduct. We affirm the judgment of conviction.

### STANDARD OF REVIEW

We review a trial court's decision on a motion for new trial for an abuse of discretion. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). "We afford almost total deference to a trial court's fact findings, view the evidence in the light most favorable to the trial court's ruling, and reverse the ruling only 'if no reasonable view of the record could support' it." *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021) (quoting

*Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013)); *see Briggs v. State*, 560 S.W.3d 176, 184 (Tex. Crim. App. 2018). "When jury misconduct is raised in a motion for new trial, whether misconduct occurred is a decision for the trial court which will not be disturbed on appeal absent an abuse of discretion." *Short v. State*, 995 S.W.2d 948, 954 (Tex. App.—Fort Worth 1999, pet. ref'd). A defendant seeking a new trial based on jury misconduct must show that the misconduct occurred and that the misconduct was detrimental to the defendant. *See Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981); *Ford v. State*, 129 S.W.3d 541, 548 (Tex. App.—Dallas 2003, pet. ref'd).

Texas courts apply a "common-law rule against the admission of jury testimony to impeach a verdict." *McQuarrie*, 380 S.W.3d at 153; *see Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 863 (2017) (discussing different jurisdictions' versions of common-law "no-impeachment rule"). In addition, the rules of evidence provide that during an inquiry into the validity of a verdict, a juror may not testify, and the trial court may not receive an affidavit or other evidence about statements made or incidents that occurred during deliberations, "the effect of anything on that juror's or another juror's vote," or the mental processes of any jurors concerning the verdict or indictment. Tex. R. Evid. 606(b)(1). The no-impeachment rule is intended to provide privacy for jury deliberations "to encourage jurors to candidly discuss the law and facts." *McQuarrie*, 380 S.W.3d at 153. However, a juror may testify "about whether an outside influence was improperly brought to bear on any juror," Tex. R. Evid. 606(b)(2), an inquiry limited "to that which occurs outside of the jury room and outside of the juror's personal knowledge and experience," *McQuarrie*, 380 S.W.3d at 153, and the Supreme Court recently held that when a juror makes a clear statement indicating that "he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the

2

no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee," *Pena-Rodriguez*, 137 S. Ct. at 869.

## SUMMARY OF RELEVANT FACTS

Initially, we address what evidence we may consider. In the hearing on appellant's motion for new trial, five witnesses testified, and throughout the hearing, the State objected on hearsay and other grounds. The trial court sustained many of the State's objections,[1] and appellant made several bills of exception to preserve for appeal certain testimony by Juror 4 and Juror 8. In his brief, appellant refers to some of the testimony contained in the bills of exception, stating that "because there were no findings of fact entered by the court, it may be that testimony in portions of those bills was considered, and rejected by the court." However, during Juror 4's testimony, appellant asked the trial court to admit the Juror 4 bills of review as testimony. The trial court refused, saying, "If I admit it as testimony, then it comes into this hearing. It's not. It's not anything I'm going to consider, but it's on the record for purposes of appeal." Appellant then said, "So Judge, also for the appellate record, I would offer [Juror' 8's] testimony or our Bill of Exception as testimony." The trial court ruled, "I think it is there, but yes, that is now on the record for that purpose; won't be considered for purposes of my decision." Given the trial court's explicit refusals to consider any of the excluded evidence, we will only summarize the evidence admitted at the hearing.

---

[1] Appellant does not complain on appeal about the trial court's evidentiary rulings other than to allude to the *Pena-Rodriguez* rule allowing a trial court to consider evidence of racial animus. *See Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017).

After closing arguments in the guilt-innocence phase, the jury began deliberating at 10:42 a.m. At 1:20 p.m., it informed the trial court that it was "hung 6 vs 6 for a unanimous verdict," and the trial court instructed it to attempt to continue deliberations. At 2:56 p.m., the jury sent another note saying that it was still split, and the trial court responded with an *Allen* charge,[2] to which the attorneys agreed. About two hours later, the jury informed the trial court that it had reached a verdict, announcing that it had found appellant guilty when called back into the courtroom. The next morning, before the punishment phase began, appellant's attorney polled the jury, and all twelve jurors confirmed that they agreed with the guilty verdict.

Appellant filed a motion for new trial asserting that a post-verdict investigation had resulted in allegations of juror misconduct.[3] Appellant alleged that: jurors had commented on appellant's decision not to testify, despite a charge instruction to the contrary; jurors had commented on discussions at the bench, relaying information that one juror said he had gleaned through lip reading; one juror commented that he "knew all about these kinds of cases and that

---

[2] The Texas Court of Criminal Appeals has explained an *Allen* charge as follows:

An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve.

*Barnett v. State*, 189 S.W.3d 272, 277 (Tex. Crim. App. 2006) (citing *Allen v. United States*, 164 U.S. 492, 501 (1896)).

[3] Appellant attached to his motion the affidavits of two jurors, but the State objected to those affidavits, and they were not introduced into evidence during the hearing on appellant's motion. *See Scaggs v. State*, 18 S.W.3d 277, 281 (Tex. App.—Austin 2000, pet. ref'd) ("Motions for new trial and affidavits and controverting affidavits are mere pleadings unless offered and admitted in evidence."). We thus will not consider the affidavits in our analysis.

4

[the defendants] are all guilty"; jurors felt "intimidated" when they saw appellant "roaming free around the courthouse" before deliberations began; the jury was split for several hours, during which time one male juror "scream[ed] continuously in a loud menacing voice for almost an hour straight"; five of the not-guilty votes changed their votes after they saw appellant in the hallway "'smirking' and smiling"; and the last not-guilty voter changed her vote because she felt "overwhelmed with the screaming, that she was never getting out of the room, and abandoned after the other jurors changed their votes after seeing the demeanor" of appellant.

In the hearing on the motion for new trial, the trial court heard testimony from Juror 4, Juror 8, paralegal Oma Burton, and bail bondsman Freddie Ontiveros.[4] Juror 8 testified that during deliberations, while the jury was deadlocked, the jurors were allowed to go outside for fresh air. As she and another juror walked back in, they were stopped by the bailiff because appellant was in the same hallway, and Juror 8 testified, "The only thing we saw was him walking and then he was just smiling." She said there were no comments made about that interaction when she walked back to and reentered the jury room and said "no" when asked if she was "the only person who observed the defendant smirking." The State objected that appellant's attorney had misstated the testimony, and Juror 8 was asked to describe "what [she] saw the defendant doing when [she] walked in." She answered, "Smiling." Juror 8 testified that soon after they returned from being outside, the not-guilty votes changed their minds, and the guilty verdict was returned about fifteen minutes later. Appellant's attorney asked whether there were "times where [the jury] went on break where somebody would discuss what the lawyers would say at the Bench," and Juror 8 answered, "Yes." She also answered "yes" when asked if

---

[4] Bailiff Jim Coleman also testified, but he only explained that the jury had sent notes about being hung to the trial court, that he asked the jurors if they wanted to take a walk outside, that he walked them outside, and that he escorted them back into the jury room.

5

she "observe[d] someone lipreading the lawyers at the Bench," but after a lengthy discussion, the trial court sustained the State's hearsay objection to that question.

Juror 4 answered "yes" when asked whether she ever "had reason to believe somebody was lipreading." She explained that one juror "said that he read what [appellant's attorney was] telling the Judge when the nurse was on the stand, and that if . . . she kept on talking, [the attorney was] going to ask for a mistrial." Burton testified that during deliberations, after the jury sent out its second note saying it was deadlocked, she heard "[e]xtremely loud yelling, of one person in particular" coming from the jury room. She agreed that it was more like screaming and said that it was a male voice yelling "pretty continuous[ly]." She heard "female voices trying to say something, but then the male voice would just start talking [or] yelling over them," and testified that it was stressful to hear the yelling as she sat in the courtroom. Finally, Ontiveros testified that during deliberations, there were "a couple of times that the noise was outrageous, high, high, loud"; that it sounded "kind of" like screaming "in a high-pitched voice"; that he did not know if the voice was male or female; that other people tried to talk but that it sounded like they were being "overruled"; and that he was uncomfortable listening to the yelling.

## DISCUSSION

Appellant argues that the record shows that his attorney was "derogated for doing her job" and that the "[r]ecitation by one juror of the conversation at the bench, where Appellant's counsel threatened to ask for a mistrial, is a violation of Appellant's due process rights under the Texas and United States Constitutions because by context it was put in a negative light regarding Appellant's counsel doing her job." However, there was no evidence that the jurors had a negative reaction to the statement about counsel's "threat," that they viewed

6

appellant or his attorney in a negative light because of the information purportedly obtained through lipreading, or that appellant might have suffered any other harm as a result of the juror's remarks about what he had learned through lipreading.

Appellant next argues that his "English-speaking ability (racial in tone) was commented on along with his remaining silent." However, most of the testimony on which he might rely for those assertions was contained in the bills of exception, not in the evidence actually admitted and considered by the trial court. Appellant cites *Pena-Rodriguez* for the proposition that a juror's statements indicating an intention to rely on racial animus cannot be excluded under the no-impeachment rule, but the Supreme Court further explained:

> Not every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry. For the inquiry to proceed, there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict. To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. Whether that threshold showing has been satisfied is a matter committed to the substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence.

137 S. Ct. at 869. The Supreme Court explained that the *Pena-Rodriguez* case fell "at the intersection of the Court's decisions endorsing the no-impeachment rule and its decisions seeking to eliminate racial bias in the jury system" and that those lines of precedent "need not conflict." *Id*. at 868. The Court observed that the jury misconduct discussed in other cases in which the no-impeachment rule was upheld might have been "troubling and unacceptable" but was irregular—"anomalous behavior from a single jury—or juror—gone off course." *Id*. Racial bias, on the other hand, is "a familiar and recurring evil" that poses a risk of "systemic injury to

7

the administration of justice," thus justifying an incursion on the privacy of jury deliberations. *Id*. at 868-69.

The evidence in question was Juror 8's testimony that she heard a comment about appellant's use of an interpreter to the effect that "they heard him speak English and they didn't know why he had an interpreter," and Juror 4's testimony that the lipreading juror said that he saw appellant talking to his attorney in English and "did not understand why [appellant] would not get up and testify." Juror 4 said that the juror "kind of just said it smugly" and implied that appellant "was trying to hide something because he's not testifying, because he can speak to [his attorney] in English, but he won't get up and testify." Appellant argued that the evidence indicated racial animus, but the trial court disagreed, saying, "The only testimony we heard anyway was that they wondered why he was—had an interpreter when he [could] speak English. I didn't hear anything that I would think would rise to the level of racism, though." Appellant did not show that the alleged remarks related to appellant's language skills were more than "irregular" or "anomalous" behavior by the lipreading juror. *See id*. at 868. We cannot hold that the trial court abused its discretion in concluding that appellant had not met the high standard discussed by *Pena-Rodriguez* so as to allow the evidence about the lipreading juror's testimony to be considered. *See id.* at 869. The trial court could also have determined that the evidence, even if considered, did not show misconduct requiring that appellant be granted a new trial. *See Briggs*, 560 S.W.3d at 184; *McQuarrie*, 380 S.W.3d at 150.

Finally, appellant states, "Though *Pena-Rodriguez* was concerned with race, had there been the same violation of one's right to remain silent Appellant says the same result would be had." As noted earlier, appellant did not show that any remarks to the effect that appellant could speak English and was hiding behind a translator rather than testifying was anything more

than "anomalous behavior by a single" juror. *See* 137 S. Ct. at 868. Even if we believed it would be appropriate to extend *Pena-Rodriguez* here to allow the consideration of Juror 4 and Juror 8's testimony, that evidence does not establish that appellant's rights against self-incrimination were violated such that the trial court abused its discretion in denying his motion for new trial. *See Briggs*, 560 S.W.3d at 184; *McQuarrie*, 380 S.W.3d at 150; *Garza*, 630 S.W.2d at 274; *Short*, 995 S.W.2d at 954.

We overrule appellant's sole issue on appeal.

## CONCLUSION

Having overruled appellant's argument on appeal, we affirm the trial court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed: June 30, 2021

Do Not Publish

9