**Opinion issued April 27, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-01014-CR

———————————

## MARCELL LAMONT KENNEDY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1448210**

---

## MEMORANDUM OPINION

The State charged Appellant, Marcell Lamont Kennedy, with aggravated robbery.[1] Appellant pleaded not guilty, the jury found him guilty, and the trial court assessed punishment at six years' confinement. In five issues on appeal, Appellant

---

[1] *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2), 31.03(a) (Vernon 2011).

argues that (1) the trial court abused its discretion by denying his *Batson* challenge; (2) the trial court committed fundamental error by failing to include a jury instruction; (3) his rights were violated by how the trial court responded to a question from the jury; (4) the jury improperly considered punishment in determining his guilt; and (5) the trial court abused its discretion by denying his motion for new trial based on the State's alleged failure to disclose exculpatory evidence.

We affirm.

## Background

In the early morning of November 12, 2014, Trevonta Rusher pointed a gun at two people. He took their phones and the wallet of one of the complainants. Based on a description of the car in which Rusher fled, the police found the car and detained Rusher and Appellant, the driver of the car. The police found two phones and some money in Appellant's pockets. The phones belonged to the complainants. The police took Rusher and Appellant back to the complainants. The complainants identified Rusher and Appellant as the robber and car driver, respectively. During trial, the trial court determined that not all police department procedures were followed during this "show up" identification of Appellant by the complainants.

During voir dire at the start of trial, the State asked the venirepanel members to say whether they thought people accused of committing a crime received fair trials. The State asked the members to answer on a scale of one to eight, with one

2

being strongly disagreeing and eight being strongly agreeing. Venirepanel members 1 and 32 said five. Venirepanel member 38 said four.

The State also asked the jurors whether the primary focus in assessing punishment in the current case should be on rehabilitation, punishment, or safety of the community. Venirepanel members 1 and 32 said rehabilitation. Venirepanel member 38 said punishment.

Venirepanel member 1 recounted, during voir dire, an experience with police officers in which she felt she had been treated unfairly. The State later noted that she appeared upset while recounting the experience.

Venirepanel member 32 recounted an experience of being kicked off of a school bus and taken back to school in a police car. He explained that someone else had said the word "gun" on the bus. That person was removed from the bus along with him, even though he had not been involved in the situation.

Venirepanel member 38 discussed having a friend that was arrested for credit card fraud. She expressed concern that she could have been arrested as well if her friend had gotten arrested while the two were driving together.

The State struck Venirepanel members 1, 32, and 38 under its peremptory strikes. Based on strikes for cause and the State's striking of these three venirepanel members, no African-Americans sat on the jury. Appellant raised an objection to

this. After considering the State's reasons for striking these venirepanel members, the trial court overruled Appellant's objection.

During the jury's deliberations on guilt-innocence, the jury sent a question to the trial court, asking, "Does the defendant have to know a weapon was used in or present at the robbery to be a party to an ag[gravated] robbery?" The trial court responded, "Please refer to the charge."

The jury found Appellant guilty, and Appellant elected to have the trial court assess punishment. At the beginning of the punishment phase, the State announced that it was withdrawing its plans to present evidence that Appellant had committed the offense of trademark counterfeiting. The State explained that it learned of the existence of a video relevant to the offense that morning. Since the video had not been produced to Appellant and since it was still reviewing the evidence, the State decided not to present any evidence on this extraneous offense.

Appellant moved for a new trial. Appellant explained to the trial court that he had elected to waive his right to a jury trial on punishment based on the State's declared intention to present evidence on this extraneous offense. Given that the State was no longer presenting evidence on this matter, Appellant asked for a new trial so a jury could decide guilt-innocence and punishment. The trial court denied the motion.

Also at the beginning of the punishment phase, Appellant announced his intent to call a former juror as a witness. Appellant told the court that, based on what the witness felt were improper deliberations by the jury, the juror wanted to request leniency from the trial court in the assessment of punishment. The trial court ruled that such testimony was not relevant to the punishment phase. Appellant requested to make an offer of proof for appellate purposes, and the trial court agreed.

## *Batson* Challenge

In his first issue, Appellant argues that the trial court abused its discretion by denying his *Batson* challenge.

### A. Standard of Review & Applicable Law

The Equal Protection Clause guarantees a defendant that the State will not exclude members from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986) (internal citations omitted). A defendant's challenge to a peremptory strike under *Batson* is a three-step process. *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S. Ct. 1769, 1170–71 (1995). First, the defendant must present prima facie evidence that the strike was made on an impermissible basis such as race or sex. *Id.* at 767, 115 S. Ct. at 1170. Once a prima facie case has been presented, the burden of production shifts to the proponent of the strike to come forward with a race neutral explanation, meaning a "clear and

5

reasonably specific explanation of his legitimate reasons for exercising the challenge." *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S. Ct. 2317, 2324–25 (2005). If a race neutral explanation has been offered, then it is the trial court's duty to determine if the defendant has established purposeful discrimination. *Purkett*, 514 U.S. at 767, 115 S. Ct. at 1770–71. Throughout the challenge, the burden of persuasion remains with the defendant. *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Jury selection is reviewed from a cold record. *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex. Crim. App. 1993). The court of appeals must look at the genuineness of the prosecution's asserted race-neutral explanation, not at its reasonableness. *Gibson v. State*, 144 S.W.3d 530, 533–34 (Tex. Crim. App. 2004). We apply a "clearly erroneous" standard of appellate review of a trial court's ruling in a *Batson* claim. *Id.* at 534. To hold the trial court's decision was clearly erroneous, the appellate court must be left with a definite and firm conviction that a mistake has been committed. *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. dism'd).

**B.    Analysis**

Appellant objected to the seating of the jury based on the fact that all African-Americans had been struck from the panel. Specifically, Appellant objected to the

State's striking three black potential jurors through peremptory strikes. These were venirepanel members 1, 32, and 38.

During voir dire, the State asked the venirepanel members to say whether they thought people accused of committing a crime received fair trials. The State asked the members to answer on a scale of one to eight, with one being strongly disagreeing and eight being strongly agreeing. Venirepanel members 1 and 32 said five. Venirepanel member 38 said four.

The State also asked the jurors whether the primary focus in assessing punishment in the current case should be on rehabilitation, punishment, or safety of the community. Venirepanel members 1 and 32 said rehabilitation. Venirepanel member 38 said punishment.

The State explained to the trial court that it struck venirepanel members 1 and 32 for saying their primary focus on assessing a sentence would be on rehabilitation. All venirepanel members that were within range to be placed on the jury and that answered rehabilitation for this question were struck either for cause or through the State's peremptory cause strikes. The State also explained that it struck any members, such as venirepanel member 38, that gave a score of four or lower on whether defendants got a fair trial. The State also tried to strike venirepanel members that answered five on that question. One venirepanel member that

7

answered five was not struck and was placed on the jury. But that juror answered that his primary focus on assessing a sentence would be on punishment.

Appellant points out that one venirepanel member answered that his primary focus for assessing a sentence would be rehabilitation was not struck. This venirepanel member was so high in the order of the venirepanel members, however, that it was mathematically impossible for him to be placed on the jury, obviating the need for any peremptory strike.

The State also provided individual reasons for the three challenged strikes. For venirepanel member 1, the State pointed out that she recounted an experience with police officers in which she felt she had been treated unfairly. The State noted that she appeared upset while recounting the experience.

Venirepanel member 32 recounted an experience of being kicked off of a school bus and taken back to school in a police car. He explained that someone else had said the word "gun" on the bus. That person was removed from the bus along with him, even though he had not been involved in the situation. The State also said it observed him nodding along when another venirepanel member discussed fairness in trials.

Finally, venirepanel member 38 discussed having a friend that was arrested for credit card fraud. She expressed concern that she could have been arrested as well if her friend had gotten arrested while the two were driving together. As the

State noted, she discussed this experience during a discussion of the law of parties. *See* TEX. PENAL CODE ANN. § 7.02(a) (Vernon 2011).

The trial court overruled Appellant's objections to these strikes. We hold the record sufficiently supports the trial court's determination that the State provided a race-neutral reason for the strikes.

Appellant argues that we should also consider the fact that the jury was shuffled as part of our determination of whether purposeful discrimination exists. *See Purkett*, 514 U.S. at 767, 115 S. Ct. at 1770–71. The State points out that, while the record reflects that the jury was shuffled, there is no indication in the record of who shuffled the jury. Accordingly, even if jury shuffling were relevant to a *Batson* challenge, the matter is insufficiently developed in this case.

We overrule Appellant's first issue.

**Jury Instruction**

In his second issue, Appellant argues that the trial court committed fundamental error by failing to include a jury instruction.

## A.    Standard of Review

We review alleged jury charge error in two steps. First, we determine whether error exists, and if error exists, we review for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Howard v. State*, 239 S.W.3d 359, 365 (Tex. App.— San Antonio 2007, pet. ref'd).

9

**B.     Analysis**

After Appellant was detained, the police performed a "show up" identification with the complaining witnesses. *See Nunez-Marquez v. State*, 501 S.W.3d 226, 235 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (discussing "show up" identifications). Appellant objected to admissibility of the identification at trial. The trial court determined that police procedure was not followed in the identification process. It also determined that the process was "not so suggestive as to result in a substantial likelihood of misidentification."

On appeal, Appellant argues that the trial court should have sua sponte included an instruction on disregarding evidence obtained in violation of the law. As the State observes, Appellant has failed to identify any violation of the law warranting such an instruction.

Article 38.23(a) of the Texas Code of Criminal Procedure provides, "No evidence obtained . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). If the evidence raises an issue to whether the evidence was obtained in violation of this article, a jury instruction is required. *Id.*

10

The statute specifically lists which legal violations prohibit the consideration of evidence. Police procedure is not listed. Accordingly, the trial court's determination that some police procedures were not followed does not give rise to an instruction under this article. *See id.*; *accord Atkinson v. State*, 923 S.W.2d 21, 23 n.1 (Tex. Crim. App. 1996) (holding article 38.23 does not apply to noncompliance with agency rules unless statute specifically makes rules predicate to admissibility).

We overrule Appellant's second issue.

## Question from the Jury

In his third issue, Appellant argues that his rights were violated by how the trial court responded to a question from the jury. The State argues this issue has not been preserved. We agree.

During the jury's deliberations during guilt-innocence, the jury sent a question to the trial court, asking, "Does the defendant have to know a weapon was used in or present at the robbery to be a party to an ag[gravated] robbery?" The trial court responded, "Please refer to the charge."

Article 36.27 of the Texas Code of Criminal Procedure requires the trial court to reasonably attempt to notify the defendant and his counsel of any questions from the jury before the trial court responds to the question. TEX. CODE CRIM. PROC. ANN.

11

art. 36.27 (Vernon 2006). The trial court then must submit the question and answer to the defendant to raise any objections. *Id.*

When the record is silent as to whether the defendant was present when a question from the jury was received and responded to, we presume this procedure was followed. *Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006). If the procedure was not followed and the defendant does not raise any objections to the failure before the trial court, no error is preserved for appeal. *Id.* at 652.

We overrule Appellant's third issue.

### Jury's Consideration of Punishment

In his fourth issue, Appellant argues that the jury improperly considered punishment in determining his guilt.

At the start of the punishment phase of the trial, Appellant notified the court that he was going to present the testimony of a juror from the guilt-innocence phase of the trial. Appellant told the court that, based on what the witness felt were improper deliberations by the jury, the juror wanted to request leniency from the trial court in the assessment of punishment. The trial court ruled that such testimony was not relevant to the punishment phase. Appellant requested to make an offer of proof for appellate purposes, and the trial court agreed. Appellant now attempts to use the testimony from the offer of proof to raise an argument that he should be entitled to a new trial due to the jury's deliberation.

The trial court did not admit the evidence of the juror's testimony into any phase of the trial proceedings. *See Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007) ("Of course, an appellate court's review of the record is generally limited to the evidence that was before the trial court at the time of the trial court's ruling."). Appellant did not assert a motion for new trial before the trial court concerning any improper jury deliberation. *See* TEX. R. APP. P. 33.1 (requiring party to present complaint to trial court and to obtain ruling in order to preserve issue for appeal); TEX. R. APP. P. 21.6 (requiring criminal defendant to present motion for new trial to trial court within 10 day of filing); *Carranza v. State*, 960 S.W.2d 76, 78–79 (Tex. Crim. App. 1998) (holding presentment required for preservation under predecessor of rule 21.6). Finally, Appellant's complaint does not comport with the complaint made at trial. *See Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005) (holding error is not preserved for appeal when objection at trial does not comport with issue raised on appeal).

We overrule Appellant's fourth issue.

**Exculpatory Evidence**

In his fifth issue, Appellant argues that the trial court abused its discretion by denying his motion for new trial based on the State's alleged failure to disclose exculpatory evidence.

## A. Standard of Review

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). "A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling." *McQuarrie*, 380 S.W.3d at 150.

## B. Analysis

Sometime before the punishment phase of trial, the State notified Appellant that it intended to present evidence during the punishment phase that Appellant had committed the offense of trademark counterfeiting. Appellant elected to have punishment decided by the trial court. At the beginning of the punishment phase of the trial, the State notified the trial court and Appellant that it was no longer going to present evidence on this extraneous offense. The State explained that it learned of the existence of a video relevant to the offense that morning. Since the video had not been produced to Appellant and since it was still reviewing the evidence, the State decided not to present any evidence on this extraneous offense.

Appellant moved for a new trial. Appellant explained to the trial court that he had elected to waived his right to a jury trial on punishment based on the State's

declared intention to present evidence on this extraneous offense. Given that the State was no longer presenting evidence on this matter, Appellant asked for a new trial so a jury could decide guilt-innocence and punishment. The trial court denied the motion.

Appellant argues on appeal that the State's action constituted prosecutorial misconduct. Assuming without deciding that Appellant's issue on appeal comports with his objection at trial, *see Sorto*, 173 S.W.3d at 476, Appellant has failed to identify any misconduct on the part of the State. The State explained to the trial court that it had learned of additional evidence that morning. The State acknowledged that the evidence had not been produced to Appellant previously and elected not to present evidence of the extraneous offense "in fairness to defense counsel." There is no evidence that the State was aware of this other evidence at the time Appellant elected to waive his right to have the jury assess punishment. Nor is there any suggestion that the State withheld disclosure of this information with an intent to influence Appellant's decision on who assessed punishment.

We hold that the Appellant has failed to establish that the trial court abused its discretion by denying his motion for new trial. We overrule Appellant's fifth issue.

**Conclusion**

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).