

# NUMBER 13-19-00457-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**RUBEN NUNEZ JR.,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                           **Appellee.**

---

**On appeal from the 430th District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Silva**

Appellant Ruben Nunez Jr. appeals his conviction of two counts of indecency with

a child by sexual contact, a second-degree felony. *See* TEX. PENAL CODE § 21.11(a)(1),

(d). By three issues, which we have reorganized, appellant argues: (1) the trial court erred

when it denied his motion for mistrial; (2) the trial court erred by allowing expert testimony by a witness; and (3) the evidence is insufficient to support the convictions. We affirm.

## I. BACKGROUND

On December 13, 2018, Nunez was indicted on three counts of indecency with a child by sexual contact and one count of aggravated sexual assault of a child younger than fourteen, a first-degree felony.[1] *Id.* §§ 21.11, 21.011. The complainant, M.O.,[2] is Nunez's cousin. At trial, M.O. recounted multiple instances wherein Nunez made sexual contact with her when she was approximately seven years old. At the time, Nunez was eighteen years old and resided with M.O., her parents, and her infant sister in McAllen, Texas. M.O.'s mother testified that M.O. told her of the assaults when M.O. was still seven years old.

Among the incidents M.O. recounted, she testified that Nunez held her down and forced her to touch his penis:

> Ruben[] was pinning me down. I was on my back and I mean, I was seven. He was 18. So he was a lot stronger than me. He had me pinned down[,] and he had [h]is pants off to where I can see his private parts and he had— he was pulling my hand toward his private parts for me to touch him, and this time, I remember him saying, "It's okay. It's okay." Because I really didn't like it. So I think I was really squirming. Well, I know I was really squirming and trying to get away, because I remember the pain in my wrist from trying to pull back. And he said, "It's okay. I do this with [my girlfriend] all the time. It's okay."

M.O. later clarified that Nunez did force her to touch his penis during the incident. M.O. also recounted that she had her father wrap her tightly in a blanket at night when she went to bed in hopes it would prevent Nunez from coming into her bedroom and touching

---

[1] Prior to trial, the State abandoned count two, indecency with a child by sexual contact, and count four, aggravated sexual assault of a child younger than fourteen. TEX. PENAL CODE ANN. §§ 21.11, 21.011.

[2] To protect the identity of the complainant, who was a minor at the time the crimes occurred, we refer to her by her initials only. *See* TEX. R. APP. P. 9.8 cmt.

her breasts, as he had before. When describing the origins of her father wrapping her tightly in a blanket, M.O. explained:

> [W]e could be like watching a movie and to get comfortable, you know, ["]let's get you tight["], and then—but when the incidents would happen, I started asking [my father]—he wouldn't do it at night, but when the incidents started happening, I would ask him to put me to sleep like that.

When asked how she could be "100 percent" sure it was Nunez touching her at night when the lights were off, M.O. stated, "[b]ecause I know how his touch felt like."

M.O. said that Nunez would occasionally come up behind her while she was doing her homework and reach under her shirt and rub her breasts with his hands. In a similar incident, M.O. recounted:

> I was in the kitchen doing homework and this one, I remember extremely vividly. I was doing homework and he grabbed me and put me on the counter. I was kind of small so he picked me and put me on the counter, the kitchen counter. The sink was on this side, and it was kind of open here, and he started putting his hands—started on my legs and going up, but because I had my gymnastics uniform on, it was kind of tight. The shorts were kind of tight, because it was spandex. And he was trying to put his hands through the shorts. And at this time, I remember thinking, you know, in the 90s they had these, like a block with a whole bunch of knives, you know kitchen knives, and I remember thinking: If I—if only I can get him to stop. If I can grab one of these knives and get him to stop. But then I was like, no, because then I'm going to get in trouble. You know, I don't want to get in trouble, so I'm not going to do that. So he was continuing. The only thing is, I don't remember how that stopped, how that event stopped.

Jeanette Rodriguez, a licensed professional counselor and mental health therapist with the Children's Advocacy Center, was called to testify on behalf of the State. Rodriguez did not interview M.O., and only testified broadly to aspects of child sexual abuse cases, including "grooming," delayed outcries, and common effects of sexual abuse in children. During Rodriguez's testimony, the following colloquy occurred:

> [State]: Okay. So I want to talk about your general knowledge to educate the jury in understanding the dynamics of a victim of child abuse as well as a perpetrator. Okay.

|  | And so to do that, my first question is, can you explain for the jury what the term "grooming" means, if you know? |
| --- | --- |
| [Rodriguez]: | Okay, so grooming is a term that we—that is commonly used when it comes to sexual abuse. It is related to— |
| [Nunez]: | Your Honor, I'm going to object to relevance, Judge. One, she has not individually interviewed the alleged accuser in this case, Judge, and she's legally[—] |
| [COURT]: | What is your response from the State? |
| [State]: | Judge, we didn't ask any questions and will not ask any questions about the victim. However, she's educating the jury in general knowledge as fa[r] as the psychology of child victims. |
| [COURT]: | Okay, the objection is overruled. Court will allow it. |

Nunez did not object to Rodriguez's testimony again.

After both the State and Nunez rested their cases in chief, but before closing arguments, Nunez moved for a mistrial outside the presence of the jury. According to Nunez, M.O. posted a photograph of herself at seven years' old to a social media account, stating that she had been waiting to testify against her abuser for "20 something years" and that Nunez had "fled to Mexico." Nunez did not offer the post as an exhibit nor introduce it into the record in any manner. Nunez's counsel stated that "[he] had no knowledge" of whether any juror had been made aware of the post. The trial court denied Nunez's motion, noting there was no indication the jury was aware of the post. However, the trial court had previously instructed the jury to "not conduct [their] own investigation about this case" and to refrain from communicating with anybody regarding the trial, including through social media.

The jury found Nunez guilty of both offenses. The trial court sentenced Nunez to fifteen years' confinement for each offense, to run concurrently. This appeal followed.

4

## II. SUFFICIENCY OF THE EVIDENCE

We first address Nunez's third issue challenging the sufficiency of the evidence supporting his conviction because, if sustained, it would provide Nunez the greatest relief. Nunez does not specify which count the evidence was insufficient to support. Accordingly, we construe Nunez's argument as a challenge to each conviction.

### A. Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The uncorroborated testimony of either the child or an outcry witness is sufficient to support a conviction for indecency with a child or sexual assault of a child. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (providing that courts give wide latitude to testimony provided by child victims of sexual

5

abuse); *see* Tex. Code Crim. Proc. Ann. art. 38.07(a) ("A conviction under Chapter 21 . . . is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred."); *see also Benson v. State*, No. 13-18-00450-CR, 2020 WL 4812635, at *10 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, pet. ref'd) (mem. op., not designated for publication). The State has no burden to produce any corroborating or physical evidence. *Gutierrez v. State*, 585 S.W.3d 599, 607 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the fact-finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* Tex. Code Crim. Proc. Ann. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Walker*, 594 S.W.3d at 336.

For indecency with a child by sexual contact, the State was required to prove, beyond a reasonable doubt, that (1) Nunez (2) engaged in sexual contact (3) with a child (4) who was younger than 17 years of age. Tex. Penal Code Ann. § 21.11(a). Sexual contact includes touching a child, including through clothing, on the child's breast, if done with the intent to arouse or gratify the sexual desires of any person. *Id.* § 21.11(c)(1).

6

Sexual contact also includes touching any part of the body of a child with the genitals of another person, if done with the intent to arouse or gratify the sexual desires of any person. *Id.* § 21.11(c)(2). "By its nature, a culpable mental state must generally be inferred from the circumstances." *Nisbett*, 552 S.W.3d at 267; *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) ("Proof of mental state will almost always depend upon circumstantial evidence.").

## B.    Analysis

Nunez does not challenge a particular element of the offense; rather, Nunez calls into question the sufficiency of M.O.'s testimony as a whole. M.O. testified to multiple incidents that constitute indecency with a child by sexual contact. *See* TEX. PENAL CODE ANN. § 21.11. In particular, M.O. identified instances where Nunez would approach her from behind while she was doing homework, put his hand under her shirt, and rub her breasts. *See id.* § 21.11(c)(1) (including touching a child's breast in the definition of sexual contact). M.O. testified that she was seven years old and Nunez was eighteen when the contact occurred. *See id.* § 21.11(a). The jury may have inferred from M.O.'s testimony and the circumstances that Nunez rubbed M.O.'s breasts for the purpose of sexual arousal or gratification. *See Nisbett*, 552 S.W.3d at 267; *see Gonzalez Soto v. State*, 267 S.W.3d 327, 334 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) ("The jury could infer from the totality of appellant's conduct that touching A.R.'s breast and genital area was done with the intent to arouse and gratify his sexual desire."); *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.) (finding that the jury could infer intent from the way in which appellant touched complainant's "bottom" and that appellant's actions made complainant feel uncomfortable); *see also* TEX. PENAL CODE ANN. § 21.11. Further, the jury, as the fact-finder, was the exclusive judge of M.O.'s

7

testimony and what weight to give it. *See Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

M.O. also testified to a specific incident wherein "[Nunez] had [her] pinned down and he has his pants off where [she could] see his private parts . . . ." M.O. testified that Nunez said, "It's okay, I do this with [my girlfriend] all the time." Additionally, when asked if Nunez had M.O. touch his penis during the incident, M.O. confirmed, "Yes. Yeah." Sexual contact includes touching *any part* of the child's body with one's genitals, if done for the purposes of sexual arousal or gratification. *See* TEX. PENAL CODE ANN. § 21.11(c)(2). The jury could have inferred Nunez forced the contact for the purposes of sexual arousal or gratification based on his statement: "I do this with [my girlfriend] all the time." *See Nisbett*, 552 S.W.3d at 267; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (providing that the jury may rely on its collective common sense and apply common knowledge and experience); *Gonzalez Soto*, 267 S.W.3d at 334; *see also* TEX. PENAL CODE ANN. § 21.11. As discussed, *supra*, the jury was the exclusive judge of M.O.'s testimony and what weight to give it. *See Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Nunez also questioned the veracity of M.O.'s testimony. In support of his argument, Nunez asserts that M.O.'s testimony during direct examination was the "complete opposite in cross examination" regarding M.O.'s father wrapping her in a blanket. Nunez also claims "[M.O.]'s testimony is noticeably clear that she never saw the perpetrator when she was cross examined." However, the evidence is contrary to Nunez's assertions. M.O. identified Nunez as the perpetrator on a number of occasions. Further, a review of M.O.'s testimony during direct and cross examination regarding being wrapped in a blanket does not reveal any inconsistencies. M.O. testified that her father

8

would occasionally wrap her tightly when they would watch movies, but she began asking him to do it when she went to bed in order to protect herself from Nunez after the assaults started. *See Walker*, 594 S.W.3d at 335.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a reasonable trier of fact could have found each essential element beyond a reasonable doubt for both convictions. *See Stahmann*, 602 S.W.3d at 577; TEX. PENAL CODE ANN. § 21.11. Appellant's third issue is overruled.

### III.        MOTION FOR MISTRIAL

By his first issue, Nunez asserts the trial court abused its discretion by denying his motion for mistrial, based on a purported social media post by M.O.

### A.        Standard of Review and Applicable Law

A trial court's denial of a mistrial is reviewed for an abuse of discretion, and we must uphold a trial court's ruling if it is within the zone of reasonable disagreement. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Stahmann v. State*, 548 S.W.3d 46, 68 (Tex. App.—Corpus Christi–Edinburg 2018), *aff'd*, 602 S.W.3d 573 (Tex. Crim. App. 2020). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd*, 3 S.W.3d at 567). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ladd*, 3 S.W.3d at 567. The question of whether a mistrial should have been granted involves a similar analysis as a harm analysis. *Hawkins*, 135 S.W.3d at 77. In determining whether a trial court abused its discretion, we review: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Id.*; *see also Cook v. State*, No. 13-19-00610-CR, 2021 WL 317645, *3 (Tex.

9

App.—Corpus Christi–Edinburg January 28, 2021, no pet. h.) (mem op. not designated for publication).

"A juror must . . . use the law, the evidence, and the trial court's mandates as his ultimate guide in arriving at decisions as to guilt or innocence and as to punishment." *McQuarrie v. State*, 380 S.W.3d 145, 153 (Tex. Crim. App. 2012) (quoting *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002)). "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. "The primary goal of Article 36.22 is to insulate jurors from outside influence." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Id.* "Outside influence" means "something originating from a source outside of the jury room and other than from the jurors themselves." *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012).

## B.    Analysis

After the State rested its case-in-chief, Nunez moved for mistrial, pointing to a purported social media post by M.O. According to Nunez, M.O. posted a photo of herself at age seven and stated, "that she has spent 20 something years waiting to testify against her abuser" and "also indicated [Nunez] fled to Mexico."[3] Although Nunez asserts that the social media post "was an intentional and willfully calculated effort to deprive [Nunez] of a fair and impartial trial[,]" he has failed to demonstrate any harm occurred. *See* TEX.

---

[3] We note that Nunez failed to produce the social media post at the time of his motion, did not call M.O. as a witness to establish that she actually made the post, nor did he state when the post was made. *See Simmons v. State*, 288 S.W.3d 72, 79 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("It is appellant's burden to not only preserve the alleged error for review, but to present a record of the alleged error sufficient for us to review it and determine if it was error and if so whether the defendant was harmed.").

10

CODE CRIM. PROC. ANN. art. 36.22. Indeed, when the court inquired as to whether the jury was aware of the post, Nunez's counsel stated that "[he] had no knowledge" of whether any juror had been made aware of it. *See id.* Without evidence that a violation of article 36.22 actually occurred, Nunez is not entitled to a presumption of injury. *See Ocon*, 284 S.W.3d at 884. Accordingly, we conclude the trial court did not abuse its discretion in denying Nunez's motion for mistrial. Nunez's first issue is overruled.

## IV. EXPERT TESTIMONY

By his second issue, Nunez asserts that the trial court erred by admitting Jeanette Rodriguez's testimony as an expert witness. *See* TEX. R. EVID. 702 (allowing "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education" to testify in the form of an opinion or otherwise to assist "the trier of fact to understand the evidence or to determine a fact in issue"); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). However, at trial, Nunez's objection was limited to the relevance of Rodriguez's testimony.[4] *See* TEX. R. EVID. 401, 402.

"To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Simmons v. State*, 288 S.W.3d 72, 77 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1)). "A defendant's appellate contention must comport with the specific objection made at trial." *Id.* (citing *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)). "An objection stating one legal theory may not be used to support a different legal theory on appeal." *Id.* (citing *Braxton v. State*, 909 S.W.3d 912, 918 (Tex.

---

4 Nunez objected as follows: "Your Honor, I'm going to object to relevance, Judge. One, she has not individually interviewed the alleged accuser in this case, Judge, and she's legally[—]"

11

Crim. App. 1995)). "A reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention." *Id.* (citing *Braxton*, 909 S.W.3d at 918).

Nunez did not object to Rodriguez's testimony as an expert pursuant to Rule 702. *See Simmons*, 288 S.W.3d at 77; TEX. R. EVID. 702. Further, Nunez did not challenge Rodriguez's qualifications as an expert. *See Simmons*, 288 S.W.3d at 77. Because Nunez's argument on appeal does not comport with his argument at trial, he has failed to preserve the error for review. *See id.* Nunez's second issue is overruled.

## V. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of March, 2021.